# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LEROY AND DEBBIE CAMPOS,**

    **Plaintiffs,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　　　**CIV. No. 98-1574 JP/LFG**

**THOMAS BROOKSBANK,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

On January 20, 2000 Defendant filed a motion to dismiss (Doc. No. 38) under Fed. R. Civ. P. 12(b)(6). For the reasons discussed herein the motion will be denied.

I.    Background

The factual allegations as taken from the complaint and the pleadings are as follows: Plaintiffs Leroy Campos and Debbie Giron Campos purchased a used car which they ultimately returned to the seller. Plaintiffs' finance company treated the return as a repossession, resold the car, and then sought a deficiency against Plaintiffs. To aid in collection of the alleged debt, the finance company hired Defendant, an attorney. On September 27, 1997 or October 2, 1997[1] Defendant, on behalf of his client, filed suit against Plaintiffs in New Mexico state court. Plaintiffs claim that they were never personally served. Defendant claims that on October 2, 1997 he served Eva Campos. Eva Campos is the sister of Plaintiff Leroy Campos and was not a named defendant.

---

[1] Defendant cites to both dates as the date of filing. (Compare Def's Memo in Supp. at 2 with Def's Reply at 2.). As it makes no difference to the resolution of the present motion, I make no determination as to which date is correct. Plaintiffs state that Defendant filed suit on October 2, 1998. (See Pls' Br. at 3.) I am assuming Plaintiffs' representation is a typographical error.

Plaintiffs claim that on January 23, 1998, in support of a default judgment, Defendant executed an affidavit in which he misrepresented the services he rendered and the compensation he could receive for the collection of the debt. Plaintiffs also claim that on January 27, 1998, Defendant's "office prepared . . . an affidavit of James Fox" in which Fox falsely stated that Plaintiffs were personally served. (Complaint ¶ 13.) On April 2, 1998, Defendant filed his and Fox's affidavits. The state court then entered default judgment. Plaintiffs claim that these alleged misrepresentations to the state court constitute violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 through -22 ("UPA").

Sometime on or after April 2, 1998 Plaintiffs learned of the default when their wages were garnished. Plaintiffs then hired an attorney who helped set aside the judgment. After the reinstatement of the debt collection suit, Defendant noticed the deposition of Zia Credit Union. Plaintiffs claim that the credit union had no information relevant to liability or damages. Plaintiffs allege that Defendant only sought to obtain information about Plaintiffs' assets, which was improper at that stage of the case. Plaintiffs claim that the deposition notice also violated the FDCPA and the UPA.

Plaintiffs filed this suit on December 28, 1998.

II.     Standard

In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim, the court must liberally construe the pleadings, accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). The issue before a court considering a motion to dismiss is not

"whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint may be dismissed only if it appears to a certainty that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

III. Discussion

Defendant moves to dismiss on two grounds. First, Defendant moves to dismiss the FDCPA claim, on the ground that the one-year limitation for FDCPA actions bars Plaintiffs' claims under that act. See 15 U.S.C. § 1692k(d). Second, Defendant moves to dismiss the UPA claim, on the ground that Defendant is an attorney licensed to practice in New Mexico and is permitted to file affidavits and notice depositions in the course of a debt collection suit.

    A.    FDCPA claim

The FDCPA states that actions to enforce it must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiffs filed this action on December 28, 1998. Defendant argues that because the service, to which Plaintiffs object, on Eva Campos in the state court debt collection suit and the filing of the suit itself occurred more than one year before December 28, 1998, the present suit is time-barred. Plaintiffs claim that they object under the FDCPA to only three actions: the execution and filing of two affidavits and the notice of deposition, all of which occurred within one year of December 28, 1998.

Defendant relies heavily on two distinguishable cases, Sierra v. Foster & Garbus, 48 F. Supp. 2d 393 (S.D.N.Y. 1999) and Calka v. Kucker, Kraus & Bruh, No. 98 Civ. 0990(RWS), 1998 WL 437151 (S.D.N.Y. Aug. 3, 1998). Defendant claims that these cases lead to the conclusion that because the objectionable actions took place within the context of, or arose out

of, the underlying collection suit filed over a year prior to the filing of this suit, the statute of limitations bars Plaintiffs' FDCPA claims. Defendant further argues that to adopt Plaintiffs' argument "would unfairly burden attorneys with the threat of FDCPA claims at every turn throughout the litigation" and that "[s]tretching the statute of limitations out indefinitely with the filing of each related pleading, motion or affidavit is unwarranted." (Deft's Reply at 2.)

In <u>Sierra</u>, during the spring of 1997, the creditor's counsel defendant sent several demand letters to the debtor plaintiff. <u>See</u> <u>Sierra</u>, 48 F. Supp. 2d at 394. The parties reached a settlement agreement on June 5, 1997 which the plaintiff breached by the end of the year. <u>See id.</u> On January 21, 1998 the defendant served the plaintiff with a summons and complaint, noticing a state court to enforce the agreement. <u>See id.</u> In the fall of 1998 the plaintiff sued the defendant alleging that the June 5, 1997 agreement authorized attorneys' fees which violated the FDCPA. <u>See id.</u> at 395. The federal district court found that the plaintiff could not avoid the one-year time bar by arguing that his claim was part of a continuing violation. <u>See id.</u> Although the plaintiff filed his federal suit within a year of the filing in state court of defendant's debt collection action, the court rejected Plaintiff's argument. <u>See id.</u> New communications (the January 21, 1998 summons and complaint) concerning an old claim (the 1997 settlement agreement and collection letters) did not start a new period of limitations. <u>See id.</u>

In <u>Calka</u>, the debtor/renter plaintiff stated that one defendant (her creditor) took assignment of a claim for back rent and then incorporated that assignment into a suit filed by another defendant (her creditor's counsel) on July 16, 1996 in state court for use and occupancy. <u>See</u> <u>Calka</u> 1998 WL 437151, at *1-2. The plaintiff claimed that the creditor defendant used the assigned back rent claim to file the state suit and inflated that claim, in violation of the FDCPA.

4

See id. at *1-4. The plaintiff, however, waited until February 11, 1998 to file her federal FDCPA suit. See id. at *3. The plaintiff argued that her suit was not time barred because the defendant filed an amended complaint in state court, containing the same objectionable back rent claim, and a motion for summary judgment on the same claim within a year of her FDCPA suit. See id. The court rejected the plaintiff's continuing violation argument. See id. It found that the plaintiff was on notice of the facts which formed the basis of her FDCPA claim when the defendant filed its state court action, at which time the plaintiff's cause of action therefore accrued. See id.

In contrast, Plaintiffs in this case do not make any continuing violation argument or attempt to stretch out the statute of limitations indefinitely. Instead, they point to actions (the execution and filing of two allegedly false affidavits and the notice of intent to depose the credit union) taken in 1998 by Defendant within a year of the filing of this case. While those acts occurred during the course of litigation initiated more than a year before the FDCPA suit, that fact does not shield Defendant from FDCPA scrutiny. Lawyers engaged in litigation are subject to the FDCPA. See Heintz v. Jenkins, 514 U.S. 291, 294 (1995). Thus, Defendant's motion to dismiss on statute of limitations grounds will be denied.

Alternately, even if the FDCPA claims would ordinarily have accrued in the fall of 1997, on either the date Defendant filed his debt collection suit or the date Defendant served Eva Campos, Plaintiffs did not have notice of those acts at that time. (See Complaint ¶ 12.) Plaintiffs allege that they did not receive actual notice of the debt collection suit, or even of the allegedly false affidavits, until Defendant successfully had their wages garnished. The state court entered default against Plaintiffs on or after April 2, 1998. The garnishment, which ultimately led to actual notice (and a subsequent decision by the state court to set aside the default), must have

5

occurred still later.[2]  Plaintiff was therefore not "on notice of the misrepresentation and unconscionable debt collection means when the state action was filed," in contrast with the plaintiff in Calka.  Calka, 1998 WL 437151 at *3.  Under this view, the violation did not accrue until after April 2, 1998 and was thus well within the one year statute of limitations.  Accordingly, Defendant's motion to dismiss under Rule 12(b)(6) for failure to comply with the limitations provision found at 15 U.S.C. § 1692k(d) will be denied.

    B.       UPA claim

The New Mexico UPA states that, "Nothing in [this Act] shall apply to actions or transactions permitted under laws administered by a regulatory body of the state of New Mexico or the United States."  See N.M. Stat. Ann. § 57-12-7 (1995 Repl. Pamp.)[3]  Defendant argues that section 57-12-7 exempts him from UPA's coverage because he is an attorney engaging in activities which are regulated and licensed by the State Bar of New Mexico and the New Mexico Supreme Court and that he is subject to the "exclusive disciplinary jurisdiction of the Supreme Court and the Disciplinary Board."  See Rule 17-201 NMRA 2000.  Defendant claims that state

---

[2] Under the facts as alleged by Plaintiffs, Plaintiffs also were not under constructive or inquiry notice, as might trigger the start of the limitations period, until within a year of the filing of this action.

[3] The New Mexico legislature has since amended the cited statutes, effective June 18, 1999, after development of the operative facts and the filing of this case.  The amended statute reads:

> Nothing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act.

N.M. Stat. Ann. § 57-12-7.

6

and federal decisions interpreting the exemption in section 57-12-7 lead to the conclusion that "even gross misrepresentation would not be actionable" "as long as the New Mexico Supreme Court grants permission to engage in the business of the transaction." (Def's Reply at 3-4 (internal quotations omitted).) In other words, Defendant's position is that he is not liable under UPA because the state supreme court permitted him, as a licensed attorney, to move for default judgment, file affidavits in connection with that motion, and notice a deposition. Plaintiff argues that section 57-12-7 only allows Defendant to assert compliance with other laws as a defense, that there is no blanket UPA exemption for attorneys, and that nothing in the New Mexico Rules of Professional Conduct permits Defendant to mislead a court or abuse the discovery process.

The New Mexico appellate courts have twice considered section 57-12-7. The first occasion was in State ex rel. Stratton v. Gurley Motor Company, 105 N.M. 803, 737 P.2d 1180 (Ct. App. 1987). In that case, the court analyzed whether the UPA exception exempted a car seller defendant accused of directing customers to Lloyds of the Southwest, an insurance provider, without disclosing the substantial rebate Lloyds would then remit to the defendant when a customer purchased insurance. See 105 N.M. at 804-05, 737 P.2d at 1181-82. The defendant argued that the Insurance Holding Company Act regulated the objectionable conduct, the alleged illegal rebates. See id. at 807, 737 P.2d at 1184. The defendant also argued that Lloyds was an insurer within the meaning of the Insurance Company Holding Act and that as defendant was Lloyds' affilate, both entities were outside the scope of the UPA. See id. The court of appeals found that the defendant was not exempt. See id. It noted that the rebates forming the basis of the case were not explicitly permitted under the Insurance Company Holding Act or even implicitly authorized. See id. But the court of appeals continued, stating

7

> We construe the language 'permitted under laws administered by a regulatory body' in Section 57-12-7 to require more than the mere existence of a regulatory body in order for the exemption to apply. At a minimum, the regulatory body must actually administer the regulatory laws with respect to the party claiming the exemption, thereby exercising at least the modicum of oversight that the exempting language indicates is required. In effect, this means the regulatory body must render permission to engage in the business of the transaction through licensing, registration or some similar manifestation of 'permitting' the business activity. Until the party complies with the requisite licensing or registration procedure, the regulatory body cannot be deemed to have authorized, or implicitly permitted, any transactions in the area subject to regulation.

Id. As Defendant was a separate legal entity, not authorized to deal in insurance, it could claim no exemption. See id. at 808, 737 P.2d at 1185.

The next year the Supreme Court of New Mexico considered whether the UPA exemption applied to a federally regulated bank when that bank lured the plaintiff to deposit funds in a high interest checking account but instead opened a non-interest-bearing account for him. See Ashlock v. Sunwest Bank of Roswell, N.A., 107 N.M. 100, 100-01, 753 P.2d 346, 346-47 (1988), overruled on other grounds by Gonzales v. Surgidev Corp., 120 N.M. 133, 899 P.2d 576 (1995). The court found no exemption. See id. at 103, 753 P.2d at 349. "[O]ur attention has not been directed to any federal statute or regulation that would evidence the intention of Congress or the federal regulatory branch to regulate, to any extent, the bank's failure to deliver goods or services as promised." Id.

I have previously considered Stratton and Ashlock, in Kolker v. Sanchez, Civ. No. 90-1082 JP, 1991 U.S. Dist. LEXIS 20783 at *15-17 (D.N.M. Dec. 10, 1991), in which I concluded that an attorney engaged in the unauthorized practice of law was not exempt from the reach of the UPA.

> In order for the this exemption to apply, the New Mexico Court of Appeals requires a showing that (1) the defendant's activities generally are subject to regulation by an

appropriate state or federal agency and (2) the specific activity which would otherwise constitute a violation of the Unfair Trade Practices Act is in fact 'permitted' by the applicable law or regulation.

Id. at *15-16. The defendant met part one because the New Mexico Supreme Court regulates the practice of law. See id. at *16. The defendant failed to qualify for exemption under part two. See id. The specific activity of which the plaintiff complained--the defendant attorney's assistance to a collection agency which was itself practicing law without authorization--amounted to the unauthorized practice of law and was thus, of course, not permitted. See id.

In a subsequent unpublished memorandum decision from this district, upon which Defendant heavily relies and which Plaintiffs describe as an unfortunate misapplication of the law, the court relied upon Kolker to conclude that attorneys are exempt from the UPA. See Branch v. Weltman, No. Civ. 96-931 MV/RLP, slip op. at 5 (D.N.M. May 22, 1997).[4] As a result, the plaintiffs (a law firm and its client) had no UPA claim against a firm with which the plaintiff firm contracted based on defendant's allegedly false representation that it was competent in securities and accounting litigation and its vast underestimation of the costs involved. See id. at 2-3, 5.

At least one other court in this district reached a conclusion similar to that in Branch. In Lopez v. American Airlines, No. Civ. 92-1444 M, slip op. at __ (D.N.M. November 10, 1993), Judge Mechem cited Stratton in the manner of Defendant, finding that Stratton stands for the proposition "that the regulatory body need not permit the contested action, but need only permit the actor to engage in the transaction." Id. Accordingly, Judge Mechem concluded that an airline could not be liable under the UPA because it is an entity regulated by a federal agency.

---

[4] The language in Branch is sweeping and, contrary to Defendant's representation, does not indicate that any attorney exemption should be limited to those actions or transactions permitted by the state supreme court.

9

Chief Judge Conway, for his part, noted the divergence between Kolker and Lopez, and opted to follow Kolker. See Tiberi v. Cigna Fire Underwriters Ins., Co., slip op. at 2-3 (D.N.M. Dec. 22, 1999). He found that simply because insurance companies are highly regulated and must have permission to operate does not exempt them from the purview of the UPA. See id. Chief Judge Conway has also found that section 57-12-7, prior to amendment, did not exempt accountants. See American Indian and Alaska Native Cultural and Arts Development Institute v. Daymon & Assocs., No. Civ. 98-1192 JC/WWD, slip op. at 4-6 (D.N.M. June 23, 1999).

All in this case agree that section 57-12-7 does not provide a blanket exemption for attorneys. (See Pls' Br. in Opp. at 4 and Def's Reply at 3.) Therefore, I need not address the apparently contrary holding of Branch. There also appears to be agreement over the interpretation (although not the application) of the phrase "permitted under laws administered by a regulatory body" upon which the court of appeals focused in Stratton. The relevant dispute in this case centers around the preceding phrase, "actions or transactions." The filing of affidavits and a notice of deposition within the context of litigation are actions or transactions permitted by the relevant regulatory body, see e.g., Rule 1-026(A) NMRA 2000, but misleading a court and abusing the discovery process are not, see Rule 16-303(A) and Rule 16-304(D).

The analysis which I employed in Kolker, which I see no reason to modify, is instructive. Because there is no dispute that Defendant's activities as a lawyer are state-regulated, the focus is on the second component of Kolker, namely, whether "the specific activity which would otherwise constitute a violation of the Unfair Trade Practices Act is in fact 'permitted' by the applicable law or regulation." See Kolker at *16. The specific activity which would constitute a violation of UPA is the filing of a false, misleading, or deceptive affidavit, and seeking a

10

deposition in order to intimidate. Therefore, under Kolker, the actions or transactions in which Defendant is alleged to have engaged do not exempt him from the scope of the UPA.

This conclusion is not inconsistent with Stratton. As noted, that case focused on the phrase "permitted under laws administered by a regulatory body." Stratton, 105 N.M. at 807, 7373 P.2d at 1184. The court in Stratton found that for the exemption to apply, "[a]t a minimum, the regulatory body must actually administer the regulatory laws . . . mean[ing] the regulatory body must render permission to engage in the business of the transaction through licensing, registration or some similar manifestation of 'permitting' the business activity." Id. The defendant in Stratton had no exemption largely because it was not a licensed insurer and thus not subject to oversight by insurance industry regulations and laws.[5] In contrast, Defendant in this case meets the threshold of Stratton, in that his is a business for which a regulatory body issues licenses and the like to engage in business activities such as deposing people and filing affidavits. Where Defendant falls short is at a step not raised, or at least not fully discussed, in Stratton.

To adopt Defendant's position, that filing affidavits and conducting depositions are permitted actions and are thus exempt, would be to force an overly general definition of the term "action or transaction." For example, the action or transaction for which the bank in Ashlock sought an exemption was not advertising or opening a non-interest bearing customer account or refusing to pay interest on such an account--all presumably proper. The objectionable actions, leading to UPA liability, were the bank's advertisement of a service which it did not then deliver. See Ashlock, 107 N.M. at 102; 753 P.2d at 348. An even closer example can be found in Kolker.

---

[5] The court also noted that the "activity" at issue was "not even implicitly authorized under other regulatory licensing laws." See Stratton, 105 N.M. at 807; 737 P.2d at 184.

The objectionable act in that case was not the filing of a debt collection suit by a lawyer on behalf of a client, an ordinarily acceptable activity, but rather the manner in which it was done, by assisting that client to engage in the unauthorized practice of law, making the attorney also guilty of the unauthorized practice of law. See Kolker at *15-16.

Shields v. Lefta, 888 F. Supp. 894, 897 (N.D. Ill. 1995) is also illustrative. In Shields, the class plaintiffs charged the defendant, an auto retailer, with violating the Federal Truth in Lending Act ("TILA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"). See id. at 896-98. The CFA contained an exemption almost identical to N.M. Stat. Ann. § 57-12-7. See id. at 898. The defendant claimed it was not liable for CFA violations because its actions in using model disclosure forms published by the Federal Reserve served as a defense to liability. See id. The court noted that "the extent to which defendant's [CFA] arguments can rely on its TILA compliance depends on whether defendant complied with TILA as a matter of law." Id. The defendant appeared to argue that

> as long as it used the model form, it could put false information on the form and be immune from any TILA claim for its compliance, which neither makes sense nor follows from TILA and TILA caselaw. Plaintiffs claim that where the disclosure form lists amounts paid to a third party, the form is a misrepresentation. That states a claim.

Id. at 897. For the same reasons, the plaintiffs in Shields stated a CFA claim based on the alleged misrepresentation in the disclosure form. See id. at 898. Defendant in this case similarly will not be insulated from defending a UPA claim simply because the alleged misrepresentations and abuses occurred within an otherwise sanctioned activity.

Finally, Defendant notes that "[a] determination of whether the engaged in acts are not permitted by the rules governing the legal profession is a determination for the New Mexico

12

Supreme Court." (Reply at 5 (internal quotations omitted).) This is a true statement when the determination is made for disciplinary purposes. See Rule 17-201 NMRA 2000. But section 57-12-7 calls upon a district court to make an independent determination of the same for other than disciplinary purposes. The purpose now is to determine whether Plaintiffs' UPA claims may survive a motion to dismiss, for which a court must accept as true all factual allegations in the complaint. See Swanson, 750 F.2d at 813. This is not a finding that Defendant violated a Rule of Professional Conduct or even a determination that Defendant is liable under the UPA. It is only a finding that Plaintiffs state a claim for a violation of the UPA for which they will be entitled to present evidence.

       IT IS THEREFORE ORDERED THAT Defendant's Motion to Dismiss is denied.

_____
**UNITED STATES DISTRICT JUDGE**